CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
12/18/2024
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 7:24-cr-00012 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| JOSEPH RICHARD WALKER & ) | |
| GARRETT ISAAC WILLIAMS, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

On November 21, 2024, Defendant Garrett Isaac Williams ("Williams") filed a Motion to Sever under Federal Rule of Criminal Procedure 14, seeking a separate trial from that of his co-defendant, Joseph Richard Walker ("Walker"). (ECF No. 66.) In his motion, Williams also requested that the court conduct an *in camera* review of all co-defendant statements that the government intends to use at trial. (*See id.* at 2 n.2 (citing Fed. R. Crim. P. 14(b)).) The court granted Williams's request and ordered the government to produce any such statements for its review. (*See* ECF No. 67.) The government provided the court with numerous files containing Walker's statements and other potential evidence that it may seek to use at trial, which the court has diligently reviewed. Shortly thereafter, the government filed its response in opposition to Williams's motion. (ECF No. 68.) On December 3, 2024, the court held a hearing and heard arguments on the Motion to Sever. After careful consideration of the specific facts and circumstances in this case, and for the reasons further explained below, the court will grant Williams's motion.

I. **RELEVANT BACKGROUND**

Williams and his co-defendant, Walker (collectively, "Defendants"), are charged in a

six-count indictment with various offenses stemming from an alleged conspiracy to distribute marijuana and commit a Hobbs Act robbery scheme in the Western District of Virginia. (*See* Indictment [ECF No. 3].)

The government alleges that sometime before April 2023, Defendants set up a marijuana-distribution scheme wherein they would acquire marijuana from a third individual, E.B., and resell it in the Roanoke, Virginia area. (Gov't's Opp. Br. at 1 [ECF No. 68].) Eventually, Defendants—together or separately—allegedly owed E.B. a large sum of money. (*Id.*) The government contends that Defendants then concocted a plan to erase their debt with E.B. by luring him to Walker's house under the guise of another drug sale and robbing him, presumably to scare him. (*Id.* at 2.)

On or about April 17, 2023, E.B. arrived at Walker's house. Walker allegedly confronted E.B. and, early in that interaction, shot and killed him. (*Id.*) After E.B. was killed, the government alleges that Walker put E.B.'s body in the trunk of his own car, drove it to Bedford County, Virginia, and set the car on fire. (*Id.*) Soon after, Walker traveled to Florida. (*Id.*) The government does not allege that Williams was present for any of the events occurring on April 17, nor that he intended for E.B. to be killed. (*Id.*) To the contrary, Williams explicitly told Walker they "could not kill" E.B. (*id.*), and Williams's counsel noted during the hearing that Williams was far away from Virginia (in California) on the night in question.

After first responders discovered E.B.'s body and the burning car, an investigation commenced, and Defendants were investigated by law enforcement officials. (*Id.*) Before his arrest, Walker told multiple people about what happened. (*Id.*) After his arrest in Florida, Walker also gave multiple statements to law enforcement, including Mirandized interviews—

one while at a Florida jail and one during his lengthy extradition to Virginia—and a written confession. (*Id.* at 3.) Walkers' statements inculpated himself across the board and Williams as to the drug conspiracy and in the alleged conspiracy to rob and scare E.B. (*Id.*)

Williams also gave a Mirandized interview to investigators, in which he acknowledged he was in a joint drug venture with Walker, that they each owed E.B. a sum of money, and that he had placed an order with E.B. to be fulfilled on April 17. (*Id.*) Crucially, however, Williams denied conspiring with Walker to rob E.B., insisting that Walker acted independently on April 17. (*Id.*)

The government indicted Defendants in connection with the investigation. The Indictment charges Walker in all six counts, whereas Williams is charged in only three of those counts. (*See* Indictment.) Specifically, Defendants are both charged with: conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count ONE); interference with commerce by threats or violence, by way of robbery, in violation of 18 U.S.C. §§ 2 and 1951(a) (Count TWO); and conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a) (Count FOUR). (*Id.*) Walker is also charged with possessing, brandishing, and discharging a firearm in furtherance of a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count THREE); possessing a firearm as a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count FIVE); and maliciously using fire, in violation of 18 U.S.C. § 844(i) (Count SIX).

A joint jury trial is currently scheduled to begin on January 27, 2025. Williams has now moved to sever the trial and proceed separately from Walker. Williams argues that he is entitled to a severance because a joint trial would present a serious risk of prejudice and would

compromise his rights at trial. (*See* Mot. to Sever at 2 [ECF No. 66].) Specifically, he argues that the introduction of Walker's various statements, as testimonial statements made by a non-testifying co-defendant, would violate his Sixth Amendment rights. (*See id.* at 6–7.) Further, he contends that any prejudice would be compounded by the "markedly different degrees of culpability" between Defendants and the irreconcilable defenses that will likely be offered at trial. (*See id.* at 3.) The government opposes the motion, arguing that the statements can be appropriately redacted to avoid any constitutional issues and that any other prejudice stemming from differences in culpability or defense strategies do not present an insurmountable problem that would warrant severing the joint trial. (Gov't's Opp. Br. at 5.)

## II.  LEGAL STANDARD

A motion to sever is "committed in the first instance to the sound discretion of the trial court . . . ." *Person v. Miller*, 854 F.2d 656, 665 (4th Cir. 1988). Deciding which defendants to sever and which defendant should wait for a subsequent trial is also within the district court's discretion. *See United States v. Odom*, 888 F.2d 1014, 1018 (4th Cir. 1989); *see also United States v. Aquiar*, 610 F.2d 1296, 1301 (5th Cir. 1980) ("In light of the principles of *Arizona v. Washington*, once a severance is found to be warranted by manifest necessity, the trial court has sound discretion over who is to be retained and who is to be severed."). If the court determines there will be a Confrontation Clause issue[1] before trial, the court may sever the trial. *See id.*; Fed. R. Crim. P. 14; 2 *Wharton's Crim. P.* (14th ed.) § 11:16.

---

[1] In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that the introduction of a non-testifying co-defendant's testimonial statement violates the defendant's rights under the Confrontation Clause of the Sixth Amendment because the defendant cannot cross-examine the co-defendant about those statements.

Multiple defendants may be joined in an indictment in a criminal case if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). But Rule 14 provides that, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials for counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). While Rule 14 allows a district court to sever defendants' trials, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together."[2] *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see United States v. Singh*, 518 F.3d 236, 255 (4th Cir. 2008) (adhering "to the principle that defendants indicted together should be tried together"). The presumption of joint trials is "especially strong" in conspiracy cases. *United States v. White*, No. 2:22-cr-029, 2023 WL 3959398, at *2 (W.D. Va. June 8, 2023); *see also United States v. Chorman*, 910 F.2d 102, 114 (4th Cir. 1990) ("Joinder is highly favored in conspiracy trials"); *United States v. Odom*, 888 F.2d 1014, 1018 (4th Cir. 1989) ("A joint trial of co-conspirators is preferable unless such a trial will generate conditions so prejudicial to one of the defendants as to deny him a fair trial.").

The Supreme Court has held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or

---

[2] "Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (cleaned up).

innocence." *Zafiro*, 506 U.S. at 539. Importantly, the "risk of prejudice will vary with the facts of each case," and while a higher risk of prejudice may permit a district court to conduct separate trials, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* Accordingly, "[a] defendant seeking severance pursuant to Rule 14 has the burden of demonstrating a strong showing of prejudice." *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (internal quotation omitted). A defendant must show "actual prejudice" and "not merely that a separate trial would offer a better chance of acquittal." *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995) (cleaned up).

### III.   ANALYSIS

In this case, Williams asserts that a joint trial would violate his rights under the Confrontation Clause of the Sixth Amendment and that he would be unfairly prejudiced by disparities in culpability and irreconcilable defenses between Defendants. The court will address each of these issues in turn.

#### A. Potential *Bruton* Problem

"[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating testimonial statement[s] of a non-testifying co[-]defendant [are] introduced at their joint trial . . . ." *United States v. Benson*, 957 F.3d 218, 228 (4th Cir. 2020) (citing *Bruton*, 391 U.S. at 126). Such direct statements are "powerfully incriminating," and violating the Sixth Amendment in this manner cannot be cured by simple limiting instructions. *Bruton*, 391 U.S. at 135–36. Therefore, in such a case, severance or exclusion of the statements is required to preserve a co-defendant's rights. *See Akinkoye*, 185 F.3d at 197 ("Where the unredacted out-of-court confession of a non-testifying co[-]defendant clearly implicates a

defendant, severance is required to preserve that defendant's Sixth Amendment right to confront his accusers.")

A testimonial statement violates the rights of a non-testifying co-defendant when it is facially incriminating and not when it is simply interferential or incriminating only in connection with other evidence. *Richardson v. Marsh*, 481 U.S. 200, 208–09 (1987). In this vein, the Supreme Court has clarified that the Confrontation Clause is "not violated by the admission of a non-testifying co[-]defendant's confession that did not directly inculpate the defendant and was subject to a proper limiting instruction." *United States v. Samia*, 599 U.S. 635, 655 (2023). *Bruton* only precludes the narrow category of statements that are directly accusatory or incriminating, meaning that statements that do not refer directly to the defendant but become incriminating "only when linked with evidence introduced later at trial" are not precluded. *Id.* at 652–53 (cleaned up). That said, it is the "*kind* of, not the simple *fact* of, inference" that makes a difference. *Gray v. Maryland*, 523 U.S. 185, 196 (1998). A statement may still be "facially" incriminating where the inferences linking the statement to the defendant are of the type "that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.*

This consideration is particularly relevant in the context of inoculating a facially incriminating statement by redacting a direct reference to the defendant. In some cases, it is appropriate to redact facially incriminating statements to cure what would otherwise be a violation of the Sixth Amendment under *Bruton*. But such redactions may still be impermissibly "direct" if they involve obvious modifiers, nicknames, or unique descriptions. *See Samia*, 599 U.S. at 652; *Gray*, 523 U.S. at 188–89, 196 (finding a Sixth Amendment violation where

- 7 -

prosecutors merely whited out defendant's name or replaced the name with "deleted" when reading statements in court). In a case where no redaction, neutral pronoun, or other substitution would suffice to eliminate a Sixth Amendment violation based on a highly prejudicial, facially incriminating statement, the statement must be excluded or a severance must be ordered. *See United States v. Smallwood*, 307 F. Supp. 2d 784, 788–89 (E.D.Va. 2004).

The government argues that *Samia* sets a high bar for a defendant to demonstrate that no redaction would suffice. In *Samia*, which involved a murder-for-hire plot, the Supreme Court held that a co-defendant's redacted statement that said the "other person" pulled the trigger, killing the victim, did not violate *Bruton* or the Sixth Amendment. *See Samia*, 599 U.S. at 641–42, 653. In that case, the Court concluded that "neutral references to some 'other person' were not akin to an obvious blank or the word 'deleted,'" as would be a problem under *Gray*; such a modification "falls outside the narrow exception *Bruton* created." *Id.* (cleaned up). Therefore, in conjunction with a proper limiting instruction,[3] a neutrally redacted statement of a co-defendant does not offend the Confrontation Clause.

Walker's original statements in this case are both testimonial and clearly facially incriminate Williams. Most of Walker's statements that the government intends to introduce at trial were made to law enforcement agents during hours-long interviews after he was Mirandized. Therefore, there is little doubt that these statements are testimonial. *See Crawford v. Washington*, 541 U.S. 36, 52 (2004) ("Statements taken by police officers in the course of

---

[3] The Fourth Circuit has recently re-emphasized the principle that "[w]e generally presume the jurors follow such limiting instructions." *United States v. Banks*, 104 F.4th 496, 519 (4th Cir. 2024) (citing *Samia*, 599 U.S. at 646 ("[O]ur legal system presumes that jurors will attend closely the particular language of such instructions in a criminal case and strive to understand, make sense of, and follow them.")).

interrogations are also testimonial under even a narrow standard."). Moreover, Walker directly implicates "Tez"[4] or Williams by name in numerous statements to law enforcement officers. The government intends to offer Walker's statements that Williams planned the robbery scheme to intimidate E.B., that he coordinated with Walker and the victim to set up a drug buy, and that he knew the details of this plan as well as the details of their alleged marijuana-trafficking business. Williams argues that even redactions noting only that "someone" set up the robbery, "someone" instructed Walker to rob E.B., "another person" sent E.B. to Walker's home, and that Walker worked with "another person" to sell marijuana, would be too direct or obvious of a connection to him and, therefore, violate *Bruton*. Whether Williams is correct or not (and the court takes no position today), the court agrees that the risk of prejudice is simply too high.

Under *Samia*, the Supreme Court has seemingly blessed the broad use of neutral pronoun redactions in conjunction with proper jury instructions to cure any potential *Bruton* violation. Indeed, this rule gives the government sweeping power to avoid such Sixth Amendment issues. *See Samia*, 599 U.S. at 666–67 (J., Kagan dissenting). Nevertheless, as Williams argues, this case presents unique circumstances that concern the court. This case, unlike the confession at issue in *Samia*, involves multiple statements made by Walker that implicate Williams. Walker's written statement alone contains *dozens* of direct references to Williams—so many that, on balance, the redactions become significantly more obvious and prejudicial to Williams. Moreover, the plethora of references to Williams that would need to

---

[4] "Tez" or "Taz" is one of the nicknames that refers to Defendant Williams. As explained above, such nicknames would be impermissibly direct under the Supreme Court's current standard.

- 9 -

be redacted invites substantial additional effort and potential for mistakes by all parties (and the court). But the court need not find, at this stage, that this case would definitively present a *Bruton* violation. Instead, the court recognizes that regardless of whether the evidence in this case rises to the level of requiring severance under *Bruton*, the unique factors at play justify the court exercising its discretion to grant a severance.

On this basis alone, the court is inclined to grant Williams's motion to sever. But the presence of a potential Sixth Amendment issue is not the only factor in favor of severance. Defendant Williams's remaining arguments also bear on the potential for severe prejudice.

### B. Prejudice by Disparate Culpability & Conflicting Defenses

The Supreme Court has acknowledged that "[w]hen . . . defendants are tried together in a complex case and they have markedly different degrees of culpability, [the] risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539. Additionally, "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances that severance is the only sufficient remedy. *Id.* at 538. But the Supreme Court has expressly declined to require severance in every case where co-defendants have conflicting defenses, explaining that "[m]utually antagonistic defenses are not prejudicial *per se* . . . Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538–39.

The "mere presence of hostility among defendants or a desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials." *United States v. Najjar*, 300 F.3d 466, 474 (4th Cir. 2002) (quoting *United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir. 1986)). Any conflict must go beyond mere "finger pointing." *Id.*; *see also United States*

*v. Smith*, 44 F.3d 1259, 1267 (4th Cir. 1995) ("[A] certain amount of conflict among defendants is inherent in most multi-defendant trials."). For irreconcilable defenses, "[t]here must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other . . . ." *Najjar*, 300 F.3d at 474. In other words, a severance is justified when the defendant demonstrates that the conflict is "of such magnitude that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Smith*, 44 F.3d at 1267 (cleaned up). It is the defendant's burden to make such a showing of irreconcilable differences and show how any conflict is overly prejudicial. *See United States v. Uhrich*, 228 F. App'x 248, 256 (4th Cir. 2007) (per curiam) (unpublished).

Williams argues that Defendants have irreconcilable defenses because Walker's story accuses Williams alone of owing E.B. money and planning the robbery scheme, whereas law enforcement (and presumably Williams) claims that Walker owed E.B. money; that Walker was upset with E.B. for calling his mother; and that any actions Williams took were merely to placate an angry Walker. (*See* Mot. to Sever at 7.) These differences in Defendants' respective stories alone are not enough. Williams merely points to a he-said/he-said story about who owed E.B. money and who planned the robbery or had reason to plan the robbery. To be sure, they are conflicting narratives and will likely raise conflicting issues at trial, but none that rise above what would normally be expected between co-defendants pointing the finger at each other. Therefore, the court is not persuaded that Williams will be unduly prejudiced because of irreconcilable defenses.

The court is persuaded, however, that Williams would be prejudiced by the differing

nature of their charges and potential culpability. Walker's additional charges include possessing, brandishing, and discharging a firearm during a crime of violence (and killing someone as a result), being a prohibited person in possession of a firearm, and setting fire to a car to destroy evidence after the murder. The government argues that, should Williams be tried alone, it would still present evidence of the entire story of the conspiracy, including the murder and arson, to the jury. (Gov't's Opp. Br. at 9.) Although the government may ultimately be permitted to introduce evidence of the entire conspiracy at Williams's trial, there are potentially pieces of evidence that, as to Williams, might be inadmissible because their inflammatory and gruesome nature (and attendant prejudicial effect) would substantially outweigh their probative value as to Williams's alleged involvement in the charged conspiracy itself. Neither the government, nor this court, can predict at this stage prior to trial how much of the evidence of the murder and arson will be admitted. And while it is far from clear at this stage whether Williams will be successful on any motions to exclude this evidence from his trial, he is entitled to try. *See United States v. Washington*, 887 F. Supp. 2d 1077, 1108 (D. Mont. 2012). Therefore, assuming that a joint trial would subject Williams to inflammatory and prejudicial evidence that may otherwise be inadmissible as to him, the court is not convinced that such prejudice could be cured by a simple jury instruction or other measure.

At bottom, Defendant Williams faces a high risk of prejudice in this case. The court is convinced that the use of Walker's various confessions at a joint trial presents a unique structural problem and concludes that, in conjunction with the marked differences in culpability between Defendants, these concerns warrant granting Williams's motion to sever.

### C. Order of Severance

After deciding to sever a case, the court has "broad discretion" over corresponding decisions such as the order or sequence of severed trials. *United States v. McCabe*, 103 F.4th 259, 274–75 (4th Cir. 2024).[5] In *McCabe*, the Fourth Circuit found no legal error in the district court's decision to try the "primary defendant" first where the court justified it's decision on the basis of the "interests of efficiency" and the "ends of justice." *Id.* at 271, 275.

In this case, Walker and Williams are not equally situated under the indictment. Walker has been charged in all six counts of the Indictment, whereas Williams is charged in only three.[6] *Cf. McCabe*, 103 F.4th 269–70 (charging the "primary defendant" on all 11 counts and the co-defendant in six of those counts). Moreover, as a formal matter, Walker is listed as the first defendant in the Indictment. Given this posture, the court finds, just as in *McCabe,* that Walker is the primary defendant in the Indictment and the interests of justice and efficiency justify trying Walker first. Therefore, the court will order that Walker be tried first on all counts against him (Counts 1 through 6). Subsequently, Williams will be tried separately on the counts against him (Counts 1, 2, and 4).

Since the court finds severance to be warranted under the Federal Rules of Criminal Procedure, it would be impossible to proceed without a continuance as to Williams. Therefore, the court, on its own motion, will order such a continuance. A continuance is necessary to

---

[5] Although the Fourth Circuit did not directly address the question, it acknowledged that other circuits have held that a "severed co[-]defendant has no right to be tried in a particular order or sequence." *McCabe*, 103 F.4th at 274 (collecting cases).

[6] While the court is in no way diminishing the seriousness of the charges against Williams, this factor informs the practicality and efficiency concerns in severing the trials and the determination that Walker is the "primary" defendant.

- 13 -

ensure counsel for Williams and the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. *See* 18 U.S.C. § 3161(h)(7)(A). Accordingly, this court finds that the ends of justice are served by a continuance of Williams's separate trial, and that the ends of justice served by this continuance outweigh the interests of the public and Williams in a speedy trial. *See id.*

### IV. CONCLUSION

For the foregoing reasons, Williams's Motion to Sever will be granted. Defendant Walker will proceed to trial as scheduled on January 27, 2025. The trial of Defendant Williams will be continued.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 18th day of December, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE